UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MONTY BAUCH, individually and as natural parent and next friend of O.B. his minor child, et al.,<br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>RICHLAND COUNTY CHILDREN SERVICES, et al.,<br>　　　　　　Defendants. | CASE NO. 1:14CV2765<br><br>JUDGE CHRISTOPHER A. BOYKO<br><br>OPINION AND ORDER |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #200) of Defendants, Family Life Counseling and Psychiatric Services, Steven Burggraf and Debora Van Romer, for Summary Judgment. At the same time, the Court will also consider the Motion (ECF DKT #203) of Plaintiffs, Monty Bauch and O.B., for Summary Judgment against Defendants, Family Life Counseling & Psychiatric Services, Steven Burggraf and Debra (*sic*) Van Romer and Motion to Strike Expert Report of Farshid Afsarifard, Ph.D.

**I. BACKGROUND**

This lawsuit arises out of the alleged wrongful removal of a four-year old child, O.B., from her father's (Monty Bauch's) home in January of 2011 by Richland County Children Services. O.B. was placed in foster care for nearly three years and referred to Family Life Counseling & Psychiatric Services ("Family Life") for sexual abuse counseling which lasted nearly two years. Plaintiffs allege that they suffered significant injury because O.B. was treated for sexual abuse when there was no evidence of sexual abuse, no proper diagnosis of

sexual abuse and no court finding nor adjudication of sexual abuse.

Family Life is a 501(C)(3) non-profit Ohio corporation with a principal place of business located in the City of Mansfield, County of Richland, State of Ohio. Steven Burggraf is the Executive Director of Family Life. Debora Van Romer is employed by Family Life as a Licensed Professional Counselor - Clinical Residence.

Following the Stipulated Dismissal (ECF DKT #216) of a number of claims in Plaintiffs' Second Amended Complaint (ECF DKT #123), the remaining claims against the Family Life Defendants are Count Six - Intentional Infliction of Emotional Distress; Count Nine - Negligent Training, Supervision and Retention; Count Twelve - Loss of Companionship; and Count Fourteen - Professional Malpractice.

In addition to the Cross Motions for Summary Judgment on the merits of Plaintiffs' claims, Plaintiffs also move to strike the report and testimony of Defendants' expert, Dr. Farshid Afsarifard, because it is incomplete and because he is not qualified to serve as an expert to opine on Defendants' standard of care.

## II. LAW AND ANALYSIS

### Fed.R.Civ.P. 56 Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Expert Testimony**

**Fed.R.Evid. 702 and *Daubert* challenges**

Rule 702 of the Federal Rules of Evidence states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 703 states:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

A trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, (1993). The objective of *Daubert*'s "gatekeeping" function is to ensure the reliability and relevancy of expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). The Supreme Court has held this "gatekeeping" obligation applies not only to scientific testimony, but to all expert testimony. *Id*. at 147. Courts are not required to hold a formal hearing on *Daubert* challenges. *See Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir.1999). "[N]o matter how good" experts' "credentials" may be, they are "not permitted to speculate." *Tamraz v. Lincoln Elec. Co.,* 620 F.3d 665, 671 (6th Cir. 2010), quoting *Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir.2000). "The party offering expert testimony bears the burden of establishing the foundational elements of

admissibility by a preponderance of proof." *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 718 (W.D. Mich. 2012), citing *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 244, 251 (6th Cir.2001). "Nevertheless, Rule 702's requirements are applied liberally, leaving '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [as] the traditional and appropriate means of attacking shaky but admissible evidence.'" *Jones*, 874 F.Supp.2d at 718, quoting *Daubert,* 509 U.S. at 596.

Because consideration of the proffered expert opinions is key to the Court's analysis of Plaintiffs' Professional Malpractice and Negligent Training claims, the Court will address Plaintiffs' Motion to Strike first.

Dr. Farshid Afsarifard is a clinical and forensic psychologist who has been retained by Defendants to opine on the care and treatment of O.B. by the staff and employees of Family Life Counseling and Psychiatric Services. On February 9, 2016, Dr. Afsarifard prepared his report of findings and opinions (ECF DKT #203-10), which contained this concluding statement:

> I began an independent evaluation of OB which was not completed ... there was not enough time left to complete the assessment. I plan to amend my report once I have had the opportunity to complete my evaluation of OB in order to offer an opinion of her current diagnosis of PTSD.

Plaintiffs point out that the Dr. Afsarifard never completed his report. The time for providing his report and/or supplementing the report has passed. Consequently, Plaintiffs insist that Dr. Afsarifard is incapable of opining on O.B.'s condition and whether the Family Life Defendants engaged in any practices that proximately damaged Plaintiffs. They argue that his incomplete report should be stricken.

Further, Plaintiffs argue that even if Dr. Afsarifard's report were complete and timely,

-5-

his testimony should be excluded because he is not qualified to opine on Defendant Van Romer's care and treatment of O.B. According to Plaintiffs, he lacks the qualifications to testify regarding the care and sexual abuse treatment provided by an unsupervised Licensed Professional Counselor - Clinical Residence to a pre-school girl. Plaintiffs insist that there is no evidence that Dr. Afsarifard knows what the standard is in Ohio for the training of Licensed Professional Counselors and their supervisors.

In his Affidavit (ECF DKT #211-1), Dr. Afsarifard reaffirms the opinions in his February 9, 2016 report and states that they are based upon a reasonable degree of psychological certainty. *Id*. at ¶ 7. Moreover, he states that his inability to complete his independent evaluation of O.B. "does not affect or impact [his] opinions regarding the standard of care and/or the appropriateness of the care provided." *Id.* at ¶ 12. In ¶ 6, he avers:

> Throughout my years of practice as a clinical and forensic psychologist, I have worked with and collaborated with Licensed Professional Clinical Counselors and Professional Counselors-Clinical Residents. Through my training, I am familiar with this standard of care which applies to these professionals also.

The Court disagrees with Plaintiffs' contentions that Dr. Afsarifard's report must be stricken and that his report and testimony must be excluded. First, the report is not incomplete. A review of the report reveals that Dr. Afsarifard has offered a full evaluation of the care and treatment provided to O.B. by Family Life, Van Romer and Burggraf. He does suggest that time constraints prevented him from seeing O.B. himself and opining on O.B.'s current diagnosis of PTSD. That does not negate the standard-of-care opinions he does offer.

Second, Dr. Afsarifard's report and testimony will not be excluded. Fed.R.Evid. 702 places the responsibility of "screening" expert evidence firmly upon the Court. *Daubert*, 509

U.S. at 589. "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Services*, *PSC*, 233 F.3d 382, 388 (6th Cir.2000), quoting *Daubert*, 509 U.S. at 592.

Plaintiffs complain that Dr. Afsarifard's Ph.D. in clinical and forensic psychology does not qualify him to opine on the standard of care required in the specialty of licensed professional clinical counselors. The Court finds that Dr. Afsarifard's lack of specialized experience does not disqualify him from offering his expert opinion in this case. "A witness with general qualifications in a field can be properly qualified as an expert; the lack of experience in a more specialized area within the field goes to the weight and not admissibility of the expert's testimony." *Ross v. American Red Cross*, No. 2:09-cv-905, 2012 WL 1656995, at *4 (S.D.Ohio May 10, 2012); see *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 294 (6th Cir.2007).

Experts, like Dr. Afsarifard, "are just witnesses, and they need not be purveyors of ultimate truth in order to be allowed on the stand." *Jahn*, 233 F.3d at 393. "[M]ere weaknesses in the factual basis of an expert's opinion go to the *weight* of the testimony, not its admissibility. *Ross*, *supra* at *6, citing *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir.2000).

The Court declines Plaintiffs' invitation to assign more credibility to their expert witnesses than to Defendants' expert. In its role as 'gatekeeper,' the Court shall not "supplant the adversary system or the role of the jury." *Daubert*, 509 U.S. at 596; *Ross*, *supra* at *5. Plaintiffs' Motion to Strike Expert Report of Farshid Afsarifard, Ph.D. is denied.

**Count Six - Intentional Infliction of Emotional Distress (IIED)**

Plaintiffs contend that the conduct of the Family Life Defendants was outside the bounds of decency; and so, summary judgment in Defendants' favor is precluded. Plaintiffs point to the absence of a legitimate diagnosis and the lack of an adjudication that O.B. was the victim of sexual abuse; to the inadequate credentials of Defendant Van Romer; to the sub-par supervision by Defendant Burggraf; and to the evidence that O.B.'s condition worsened under Defendant Van Romer's care, all to support their claim for Intentional Infliction of Emotional Distress.

Defendants argue that Family Life's staff undertook counseling O.B. at the request of Richland County Children Services, which was acting *in loco parentis* at the time. There is no evidence that they intended their care and treatment to cause harm to either Plaintiff Monty Bauch or to Plaintiff O.B. Finally, "[c]ounseling a child in accordance with the permission given by the child's custodian, could hardly be classified as extreme and outrageous even if the treatment is ultimately ineffective." (Defendants' Reply Brief, ECF DKT #219 at 3).

Under Ohio law, a plaintiff alleging an Intentional Infliction of Emotional Distress claim must prove the following elements:

> (1) defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
> (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
> (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
> (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008) (quoting

*Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)).

To state a claim for IIED, plaintiff must show that defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.,* 193 F.App'x. 497, 503 (6th Cir.2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) ( *overruled on other grounds* )). "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.,* 811 F.Supp. 1246, 1269 (N.D.Ohio 1993). "Serious" emotional distress must be "severe and debilitating." *Kovac v. Superior Dairy, Inc.,* 930 F.Supp.2d 857, 870 (N.D. Ohio 2013) quoting *Paugh v. Hanks,* 6 Ohio St.3d 72 (1983)).

The Court finds that the facts as alleged in Count Six do not support liability against the Family Life Defendants. The Supreme Court of Ohio, in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983), described what constitutes extreme and outrageous conduct: "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Furthermore, "[o]nly the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Brown v. Denny*, 72 Ohio App.3d 417, 423, 594 N.E.2d 1008, 1012

(1991)

While the Court is obliged to view all the facts in a light most favorable to Plaintiffs, the Court is also cognizant that "Ohio courts define extreme and outrageous conduct exceedingly narrow." *Wolfe v. Thermo Fisher Scientific, Inc.* 2009 WL 1255023, *2 (S.D.Ohio, 2009), citing *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir.1999).

On March 28, 2011, Richland County Children Services referred O.B. to Family Life for assessment of any emotional trauma relating to sexual abuse. "Parties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform." *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 49 (10th Dist. 2009).

Therefore, the Motion for Summary Judgment of Defendants, Family Life Counseling & Psychiatric Services, Steven Burggraf and Debora Van Romer, is granted on the claim in Count Six of Plaintiffs' Second Amended Complaint for Intentional Infliction of Emotional Distress.

**Count Nine - Negligent Training, Supervision and Retention**

Ohio recognizes the tort of negligent hiring or retention. The necessary elements of the tort are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *Evans v. Ohio State University*, 112 Ohio App.3d 724, 739 (10th Dist.1996).

Defendant Burggraf is the Executive Director of Family Life and Defendant Van

Romer is an employee (and was a counselor-in-training) whom Burggraf supervised. Plaintiffs proffer the report (ECF DKT #203-5) of Sarah Boettner, a Licensed Professional Clinical Counselor and owner of Good Life Counseling Services, LLC., who opines that both Burggraf and Van Romer lacked the competence and training to treat O.B.

> Burggraf violated the standard of ethical care by failing to ensure that he had the competency to develop and deliver a sexual abuse victim treatment program at his own agency. In addition to placing another counselor lacking evidentiary competencies as the Director of the program. Burggraf breached the standard of ethical care and did a disservice to his counselor supervisee, Van Romer, by allowing her the great latitude with which to provide services outside of her expertise, scope of practice and abilities. This proximately caused the harm to the welfare of O.B.
>
> Van Romer was so inexperienced with her role as a counselor with children and those specifically dealing with alleged sexual abuse that she used inappropriate diagnosis, provided treatment methods outside her purview (play therapy) and failed to document pertinent information within her progress notes that should have been documented thereby not fulfilling her requirements to reach out to her supervisor to remedy and/or educate herself to provide appropriate treatment resulting in harm to O.B.

(ECF DKT #203-5 at 6).

For their part, Defendants counter with the report (ECF DKT #211-1) of Farshid Afsarifard, who holds a Ph.D. in clinical and forensic psychology. He opines that the care and treatment Family Life Counseling & Psychiatric Services provided to O.B. was provided by qualified and properly supervised staff and employees. Specifically, he states:

> ... it is my opinion, based on reasonable psychological certainty, that Ms. Van Romer had the appropriate education, training, experience, continuing training and supervision to provide sexual abuse counseling.
>
> According to Dr. Burggraf's testimony in his deposition in this matter, he held weekly individual supervision meetings with Ms. Van Romer.
>
> Review of documents that were provided indicates that Dr. Burggraf provided specific and appropriate feedback to Ms. Van Romer in his evaluations of her work.

>Dr. Burggraf clearly has the educational background, training, experience and licensure qualification to supervise the services that Ms. Van Romer provided to O.B.

(ECF DKT #211-1 at 7).

The Court holds that the competing expert reports create a genuine issue of material fact regarding whether the Family Life Defendants are liable for Negligent Training, Supervision and Retention. Comparing two pieces of evidence, such as these two expert reports, and deeming one more credible than the other is the exclusive province of the jury. See *Jahn*, 233 F.3d at 391. The Motions of both Plaintiffs and Family Life Defendants on Count Nine of Plaintiffs' Second Amended Complaint are denied.

**Count Twelve - Loss of Companionship**

In their Motion for Summary Judgment, the Family Life Defendants simply state that Count Twelve is not an independent claim, but a claim of damages. (ECF DKT #200 at 16). They make no argument and they provide no case law in support of their position.

The Court holds that the Count Twelve of Plaintiffs' Second Amended Complaint is not just an element of damages. In Ohio, loss of consortium/companionship may not be an independent cause of action, but it is a derivative one. *Messmore v. Monarch Mach. Tool Co.*, 11 Ohio App.3d 67, 68 (1983). The Ohio Supreme Court, in *Gallimore v. Children's Hosp. Med. Ctr*., 67 Ohio St.3d 244 (1993), held that a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently injures a parent's minor child , for loss of filial consortium. *Id*. at 251. Furthermore, "in these modern times, the society, companionship, comfort, love and solace between parents and their child are the essence of that relationship." *Id*. at 250. "A loss of consortium claim is a derivative

claim and is dependent upon a defendant committing a cognizable tort ..." *Ward v. County of Cuyahoga*, 721 F.Supp.2d 677, 696 (N.D.Ohio 2010) (discussing minor child's cause of action for loss of parental consortium).

Therefore, the Family Life Defendants' Motion for Summary Judgment on Count Twelve of Plaintiffs' Second Amended Complaint for Loss of Companionship is denied.

**Count Fourteen - Professional Malpractice**

Both Plaintiffs and the Family Life Defendants move for summary judgment in their favor on Plaintiffs' claim for Professional Malpractice. Plaintiffs allege that the actions and conduct of Defendants, Family Life, Burggraf and Van Romer, were negligent and fell below the standard of care of other licensed professional counselors as it pertained to the counseling of O.B.

Malpractice refers to the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances. *Strock v. Pressnell*, 38 Ohio St.3d 207, 211 (1988).

Plaintiffs submit the expert report of Eric G. Mart, Ph.D., who is a Board Certified Forensic Psychologist. (ECF DKT #212-5). Dr. Mart offers the opinion that the type of counseling provided to O.B. "appears to have been inappropriate and may have actually increased her symptoms." *Id*. at 14.

> Ms. Van Romer in her role as therapist, and Mr. Burggraf as her supervisor, clearly assumed that O.B. had been abused by her father. I find no evidence in the records that anyone at Family Life ever considered any alternative hypotheses that might have explained O.B.'s observed symptoms. *Id*.

> Dr. Burggraf and Ms. Van Romer's failure to appropriately diagnose and treat O.B. almost certainly exacerbated her symptoms and led to the chronic symptoms of posttraumatic stress disorder that she now exhibits. *Id*. at 15.

Dr. Mart describes Van Romer's notes from O.B.'s counseling sessions as "boiler plate" and finds that the description of services provided appears the same in note after note. Dr. Mart criticizes Van Romer for utilizing untested methodologies and techniques which are inappropriate for a five-year-old child. *Id*. at 9. Further, Dr. Mart opines:

> However, it is clear that because Ms. Van Romer had decided that sexual abuse had occurred and that Mr. Bauch was the perpetrator, it is difficult to imagine that Ms. Van Romer was not proceeding with a high level of confirmatory bias. It also appears that the counseling was being used to build a case against Mr. Bauch and keep O.B. from returning to his custody. Under the circumstances, it is clear that Ms. Van Romer was involved in a dual role with O.B. (therapeutic and investigative) ... Overall, the services provided by Family Life Counseling and Psychiatric Services appear to have been more akin to witness tampering than to counseling. *Id*.

The Family Life Defendants now offer the expert report of Dr. Afsarifard on the professional malpractice issue. (ECF DkT #211-1).

> The treatment that ensued was consistent with the diagnosis and goals that were developed based on the information that was provided to Ms. Van Romer by the referral agency, the foster parents who brought the child to her appointments, and her observations/assessment of the child during the sessions. *Id*. at 10.
>
> It is this evaluator's considered opinion, based on reasonable psychological certainty that based on the information that Ms. Van Romer was provided at the time of the initial evaluation, the child's presentation during subsequent sessions, and the description of the child's behaviors by the collateral informers, she developed appropriate diagnostic impressions. She also developed and implemented effective treatment for OB. Ms. Van Romer adequately documented the services that she provided. *Id*. at 13.
>
> It is my further opinion, based on reasonable psychological certainty that Ms. Van Romer did not engage in any practices that would be considered harmful to OB's psychological functioning. She did not engage in a dual relationship in this matter. She began as OB's counselor and continued to function in that capacity until OB's father terminated her treatment. *Id*. at 15.

The Court holds that the competing expert reports create a genuine issue of material

-14-

fact regarding whether the Family Life Defendants are liable for Professional Malpractice. The Motions of both Plaintiffs and Family Life Defendants on Count Fourteen of Plaintiffs' Second Amended Complaint are denied.

### III. CONCLUSION

For all these reasons, the Motion (ECF DKT #200) of Defendants, Family Life Counseling & Psychiatric Services, Steven Burggraf and Debora Van Romer, for Summary Judgment is granted as to Count Six - Intentional Infliction of Emotional Distress and denied as to the remaining three Counts.  The Motion (ECF DKT #203) of Plaintiffs, Monty Bauch and O.B., for Summary Judgment and Motion to Strike Expert Report of Farshid Afsarifard, Ph.D. are denied in their entirety.

**IT IS SO ORDERED.**

**DATE: _3/2/2017_**

　　S/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**