**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MONTY BAUCH, individually and as** | ) | **CASE NO. 1:14CV2765** |
| **natural parent and next friend of O.B.** | ) | |
| **his minor child, et al.,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **RICHLAND COUNTY CHILDREN** | ) | |
| **SERVICES, et al.,** | ) | |
| **Defendants.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J.**</u>:

      This matter comes before the Court upon the Motion (ECF DKT #202) of Defendants,

Richland County Children Services ("RCCS"), Randy Parker, Patricia Harrelson, Edith

Gilliland, Jason Kline, Tara Lautzenhiser and Holly Hartman, for Summary Judgment and the

Motion (ECF DKT #204) of Plaintiffs, Monty Bauch and O.B., for Summary Judgment on

Counts One, Two, Four and Eight Against Individual Defendants and RCCS. For the

following reasons, Defendants' Motion is granted in part and denied in part and Plaintiffs'

Motion is denied.

# I. BACKGROUND

This lawsuit arises out of the alleged wrongful removal of a four-year old child, O.B., from her father's (Monty Bauch's) home, on January 20, 2011, by RCCS based upon allegations of sexual abuse and neglect.  The allegations of sexual abuse were never substantiated; yet, O.B. remained separated from her father for three years.  Plaintiffs claim that RCCS violated its internal policies, state law and the United States Constitution when investigating O.B.'s case, securing the removal of O.B. from her home, and keeping O.B. from her father for an inordinately long time.  RCCS insists that the individual Defendants enjoy absolute or qualified immunity from liability and that Plaintiffs cannot establish the substantive elements of their claims under state law and 42 U.S.C. § 1983.

The Richland County Children Services Board is a public entity that is bound by the laws of the State of Ohio.  RCCS's responsibilities include matters that relate to the custody of children in Richland County, Ohio.

Defendant Jason Kline was a full-time employee of RCCS who served in the capacity of a case worker.

Defendant Randy Parker was a full-time employee of RCCS serving in the capacity of Director.

Defendant Patricia Harrelson currently serves as Director of RCCS.

Defendant Tara Lautzenhiser was a full-time employee of RCCS serving in the capacity of a case worker.

Defendant Holly Hartman was a full-time employee of RCCS serving in the capacity

-2-

of a case worker supervisor.

Defendant Edith Gilliland was a full-time employee of RCCS who served as in-house counsel.  As of May 2016, Gilliland is no longer a Defendant in this action.

Following the Stipulated Dismissal (ECF DKT #216) of a number of claims in Plaintiffs' Second Amended Complaint (ECF DKT #123), the remaining claims against the RCCS Defendants are Count One - Assault and Battery; Count Two - Unlawful Search; Count Four - Violation of Civil Rights under 42 U.S.C. § 1983; Count Five - *Monell* Related Claims; Count Six - Intentional Infliction of Emotional Distress; Count Eight - Negligent Training, Supervision and Retention; Count Twelve - Loss of Companionship; and Count Thirteen - Right to Equal Protection 42 U.S.C. § 1983.

## **II. LAW AND ANALYSIS**

### **Fed.R.Civ.P. 56 Standard of Review**

Summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed.R.Civ.P. 56(c)(1)(A), (B).  A court

considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir.1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Abandonment of claims</u>**

The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc*., 545 F.App'x 368, 372 (6th Cir.2013).

-4-

With that in mind, the facts show that Defendant Patricia Harrelson was not employed by RCCS as Executive Director until after Plaintiff O.B. was returned to her father.  Since Plaintiffs make no allegations against this individual and do not offer any argument in the Rule 56 briefing, summary judgment is granted on behalf of Defendant Patricia Harrelson.

Also, Count Thirteen of Plaintiffs' Second Amended Complaint recites in ¶¶ 188-89 as follows:

> The RCCS Defendants failed to provide Plaintiffs with equal protection under the law based on their misguided and unsupported stereotypes regarding the appropriateness of an older single father's ability to raise a young girl alone.

> The RCCS regularly treated couples, single females, and younger individuals more favorably then [sic] they treated Mr. Bauch.  Mr. Bauch's gender, age and his status as an "unconventional" single parent were substantial contributing factors in the Defendant's [sic] disparate and wrongful treatment of Mr. Bauch.

Plaintiffs never identify any policy or custom of RCCS that deprives them of equal protection under the law.  Moreover, Plaintiffs submit no evidence that Plaintiff Bauch's gender, age or "unconventional" parental status played any role in the actions taken by the RCCS Defendants.  Thus, Plaintiffs' Equal Protection Claim in Count Thirteen is considered abandoned; and the RCCS Defendants' Motion for Summary Judgment is granted in this regard.

**Executive Director Randy Parker**

Plaintiffs allege that the RCCS Defendants, with the knowledge and approval of Defendant Randy Parker, "falsely represented to Mr. Bauch and his attorney that all claims of sexual abuse would be dropped if Mr. Bauch agreed to have O.B. adjudicated as a dependent child;" and that if Bauch agreed, O.B. would be returned to his custody within thirty days.

-5-

(Second Amended Complaint, ECF DKT #123 at ¶82).  However, the evidence demonstrates that Bauch admitted in open court that O.B. was a dependent child as defined in R.C. § 2151.04(C).  (May 12, 2011 Magistrate's Decision Adjudicatory and Dispositional Hearing, ECF DKT #202-2).  The Magistrate further found that the admissions were "voluntarily made with an understanding of the nature of the allegations and of the consequences of such admission."  *Id*.  When O.B. might be returned to her father rested solely in the discretion of the Juvenile Court.

Plaintiffs attempt to demonstrate, through Assistant Director, Nikki Harless, and in-house counsel, Edith Gilliland, that Randy Parker "created an awful working environment by bullying his employees, kicking legal counsel under the table at court hearings and yelling and threatening an RCCS employee, when decisions did not end up in the agency's favor, including the Bauch matter. . . .The evidence suggests the agency operated out of fear of Parker and not within policies and procedures."  (Plaintiffs' Motion for Summary Judgment, ECF DKT #204 at 15).  The Court finds that these accusations, although sworn to by RCCS employees, do not rise to the level of constitutional violations resulting in injury to Plaintiffs.

Summary Judgment is granted in favor of Defendant Randy Parker.

**Statute of Limitations**

Defendants argue that Plaintiff Monty Bauch's claims under § 1983 and for Negligent Training, Supervision and Retention are barred by Ohio's two-year statute of limitations, because the limitations period begins to run when temporary custody is granted to the county. *Kovacic v. Cuyahoga County Dept. of Children and Family Services*, 606 F.3d 301, 307 (6th Cir.2010).  Richland County had temporary custody of O.B. as of January 20, 2011 and

-6-

Bauch's claims were originally filed on November 10, 2015.

The Court is unpersuaded.  Plaintiff Bauch benefits from the Ohio tolling provisions which govern O.B.'s claims, R.C. § 2305.16.  A third-party's claims are tolled based on the disability of one party when the third-party's claims are "joint and inseparable" from the disabled party's claims.  *Bishop v. Children's Center for Developmental Enrichment*, 618 F.3d 533, 538 (6th Cir.2010); R.C. § 2305.16.  Bauch's claims are integrally tied to O.B.'s, though they are "separate and distinct."  *Id*.

Plaintiff Bauch's claims are not time-barred and the RCCS Defendants' Motion for Summary Judgment is denied in that respect.

**Counts One and Two - Assault and Battery and Unlawful Search**

Plaintiffs allege that the RCCS Defendants are liable under Ohio law, for Assault and Battery and under federal law, for Unlawful Search in violation of the Fourth Amendment because Defendants compelled O.B. to submit to a Sexual Assault/Abuse Nurse Exam (SANE).

On January 20-21, 2011, O.B. was taken into custody and placed into the Emergency Shelter Care of the Richland County Children Services Board. (*Ex Parte* Emergency Order, ECF DKT #202-10).  In response to Plaintiffs' contention, Defendants direct the Court to the Ohio Administrative Code (O.A.C.).  Pursuant to O.A.C. § 5101:2-36-03, a PCSA (public children services agency) shall take any other actions necessary to assess safety and risk to the child, including "[a]ttempting to secure a medical examination or psychological evaluation or both of the child with consent of the child's parent, guardian, or ***custodian*** or with a court order."  (Emphasis added).  *Id*.  The evidence demonstrates that Plaintiff Bauch

refused to consent to the SANE examination for his daughter.  However, according to O.A.C.

§ 5101:2-01(83), "custodian" means a person having legal custody of a child or a PCSA, ...

that has permanent, temporary, or legal custody of a child."  As O.B.'s temporary custodian,

RCCS had the right to arrange for the SANE examination to be performed on O.B.

      The Court holds that the RCCS Defendants cannot be held liable for Assault and

Battery nor for Unlawful Search caused by the SANE examinations on O.B. because RCCS

stood in the shoes of O.B.'s parent, had custody of her and had the lawful authority to arrange

for whatever was medically necessary to ensure O.B.'s safety.  Plaintiffs' Motion for

Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted as

to Counts One and Two of Plaintiffs' Second Amended Complaint.

### Count Six - Intentional Infliction of Emotional Distress (IIED)

      Plaintiffs contend that, after interviewing Monty Bauch and O.B., the RCCS

Defendants concluded that O.B. was safe in her home, was not in imminent danger and was

not a victim of sexual abuse.  Despite these conclusions and without any additional evidence,

the RCCS Defendants took actions to remove O.B. through an *ex parte* emergency removal

order.  Specifically, Defendant Holly Hartman presented false information and withheld other

vital information from the Magistrate who ultimately ordered O.B.'s removal.  Three years

passed and the RCCS Defendants never secured evidence to establish that O.B. was sexually

abused.  The RCCS Defendants knew or should have known that these tactics and the

needless separation of O.B. from her father would result in serious emotional distress to

Plaintiffs.  (Plaintiffs' Opposition Brief, ECF DKT #213 at 30).

      The RCCS Defendants argue that there is no evidence that their conduct was extreme

and outrageous.  Defendants investigated a concerned witness statement received from the Shelby Police Department; and acted in compliance with lawfully-issued Juvenile Court orders.  No reasonable juror could conclude that their actions are "utterly intolerable in a civilized community."

Under Ohio law, a plaintiff alleging an Intentional Infliction of Emotional Distress claim must prove the following elements:

> (1) defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
> (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
> (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
> (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)).

To state a claim for IIED, plaintiff must show that defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Long v. Ford Motor Co.,* 193 F.App'x. 497, 503 (6th Cir.2006) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) ( *overruled on other grounds* )).  "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement."  *Baab v. AMR Servs. Corp.,* 811 F.Supp. 1246, 1269 (N.D.Ohio 1993).  "Serious" emotional distress must be "severe and debilitating."  *Kovac v. Superior Dairy, Inc.,* 930 F.Supp.2d 857, 870

(N.D. Ohio 2013) quoting *Paugh v. Hanks,* 6 Ohio St.3d 72  (1983)).

The Supreme Court of Ohio, in *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374-375 (1983), described what constitutes extreme and outrageous conduct:  "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. * * * Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Furthermore, "[o]nly the most extreme wrongs, which do gross violence to the norms of a civilized society, will rise to the level of outrageous conduct." *Brown v. Denny*, 72 Ohio App.3d 417, 423, 594 N.E.2d 1008, 1012 (1991)

While the Court is obliged to view all the facts in a light most favorable to Plaintiffs, the Court is also cognizant that  "Ohio courts define extreme and outrageous conduct exceedingly narrow." *Wolfe v. Thermo Fisher Scientific, Inc.* 2009 WL 1255023, *2 (S.D.Ohio, 2009), citing  *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir.1999).

"Parties cannot generally be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform." *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App.3d 40, 49 (10th Dist. 2009).

The Motion for Summary Judgment of the RCCS Defendants is granted on the claim in Count Six of Plaintiffs' Second Amended Complaint for Intentional Infliction of Emotional Distress.

**Count Twelve - Loss of Companionship**

-10-

The RCCS Defendants move for summary judgment in their favor on all of Plaintiffs' claims.  They do not make a discrete argument about the Loss of Companionship claim.

The Court holds that the Count Twelve of Plaintiffs' Second Amended Complaint is not just an element of damages.  In Ohio, loss of consortium/companionship may not be an independent cause of action, but it is a derivative one.  *Messmore v. Monarch Mach. Tool Co.*, 11 Ohio App.3d 67, 68 (1983).  The Ohio Supreme Court, in *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244 (1993), held that a parent may recover damages, in a derivative action against a third-party tortfeasor who intentionally or negligently injures a parent's minor child , for loss of filial consortium.  *Id*. at 251.  Furthermore, "in these modern times, the society, companionship, comfort, love and solace between parents and their child are the essence of that relationship."  *Id*. at 250.  "A loss of consortium claim is a derivative claim and is dependent upon a defendant committing a cognizable tort ..."  *Ward v. County of Cuyahoga*, 721 F.Supp.2d 677, 696 (N.D.Ohio 2010) (discussing minor child's cause of action for loss of parental consortium).

Therefore, the RCCS Defendants' Motion for Summary Judgment on Count Twelve of Plaintiffs' Second Amended Complaint for Loss of Companionship is denied.

**Count Four - Violation of Civil Rights under 42 U.S.C. § 1983**

In their Second Amended Complaint, Plaintiffs assert a civil rights claim against all individual Defendants.  At ¶ 129, Plaintiffs allege:

> The aforesaid Defendants, and each of them, conspired to interfere with and violate the civil rights of the Plaintiffs, as set forth under 42 U.S.C. § 1983, including violation of the Plaintiffs' rights found in the First, Fourth and Fourteenth Amendments of the United States Constitution, by, but not limited to, acting and conspiring to force Plaintiff Mr. Bauch to relent to their demands, by retaliating against Plaintiffs for the exercise of his constitutional

-11-

freedoms and by removing, detaining and continuing to detain, the person and/or physical and legal custody of minor Plaintiff O.B. from the care, custody, and control of her parents, without proper or just cause and/or authority; by the use of intimidation, coercion and duress, and by using false and fabricated evidence and testimony, and failing to provide exculpatory evidence, during the investigation and initiation and pendency of the abuse and dependency proceedings, including the application for a valid warrant for the removal of O.B., in violation of, and interference with, the Plaintiffs' constitutional liberty interests under the First Amendment, their fundamental rights to familial association and due process under the Fourteenth Amendment, and in violation of Fourth Amendment rights against unreasonable searches and seizures.

Defendants contend that they are protected by immunity.  "Social workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity."  *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir.2001); *Salyer v. Patrick*, 874 F.2d 374 (6th Cir.1989).  However, absolute immunity does not apply to actions taken in the capacity of a complaining witness.  *Kalina v. Fletcher*, 522 U.S. 118, 129-30 (1997).

**Tara Lautzenhiser**

Defendant Lautzenhiser was employed as a case worker with RCCS.  She visited the Bauch home on January 18, 2011, interviewed O.B. and her father and requested the father's consent to submit O.B. to a SANE examination.  Lautzenhiser completed a Safety Assessment form and commented:  "Parent denied that the child had been exposed to inappropriate behaviors.  Child denied sexual abuse."  Her supervisor, Holly Hartman, directed Lautzenhiser to return on January 20, 2011 and again request permission for the SANE examination.

Plaintiffs have not shown that Defendant Lautzenhiser made false or misleading statements or that she acted outside the scope of her employment.  In her role as a social

-12-

worker investigating suspected child abuse or neglect, Defendant Lautzenhiser is entitled to immunity.  *Rippy, supra; Salyer, supra.*

**Holly Hartman**

In the case at bar, Defendant Holly Hartman, a case worker supervisor, executed an Affidavit for Emergency Custody and submitted it to the Juvenile Court Magistrate on January 20, 2011.  (ECF DKT #204-8).  "It is the act of personally vouching for the truth of the facts that provide the evidentiary support for a finding of probable cause that is not protected by absolute immunity."  *Young v. Vega*, 574 F.App'x 684, 689 (6th Cir.2014); *Kalina*, 522 U.S. at 129-31.

Qualified immunity offers protection to social workers so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To overcome a defendant's entitlement to qualified immunity, a plaintiff must establish: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause."  *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir.2003).

Plaintiffs point to the following false representations in Hartman's Affidavit:  She identified O.B. as an "abused" child, defined under R.C. § 2907 as a "victim of sexual activity;" and she asserted that there was a referral for sexual abuse with Bauch as the perpetrator.  Neither of these matters had been proven.  She represented that all reasonable efforts to avoid removal had been attempted when, in fact, no such efforts were made.  She claimed that Bauch could not provide O.B.'s birth certificate or certification of his right to

-13-

custody of O.B.; when Bauch provided those to Shelby Police Officer Lance Combs on the day O.B. was removed. Hartman failed to include in her Affidavit the fact the both O.B. and Bauch denied sexual abuse. She concluded that immediate removal of O.B. was required to prevent irreparable harm.

 In her deposition, Hartman admits that the agency's goal would be to provide the magistrate, in an emergency removal situation, with all the evidence available. She insists that she put in as much information as she could under the time constraints. "When things like this happen, everything is, like, get this done five seconds before you get it done, so it's just a rush." She admits to omissions, such as the fact that the father and daughter denied any sexual abuse. (ECF DKT #206-16 at 95-96).

Whether Plaintiffs have satisfied their burden of showing Hartman's statements were made falsely, or at a minimum, with a reckless disregard for their truth, whether the omissions and rushed misrepresentations in Hartman's Affidavit would weigh significantly into the magistrate's decision to issue an order removing a child from her parent's home, and whether Hartman, as affiant, had the intention to mislead, are more appropriately submitted to a jury rather than decided on summary judgment. *Hale v. Kart*, 396 F.3d 721, n.5 (6th Cir.2005).

**Jason Kline**

Defendants argue that, pursuant to R.C. § 2744, political subdivisions and their employees are not liable in damages for death or injuries to persons, if the injury or death results from the political subdivision's engagement in a governmental or proprietary function. The operation of a children's services agency is a governmental function. See R.C. § 2744.01(C)(2)(o).

Plaintiffs complain that Jason Kline, who was assigned by RCCS to implement the case plan for O.B., was utterly unqualified per R.C. § 5153.112.  His implementation of O.B.'s case plan was deficient because he lacked sufficient human services education and experience.  He was hired though he had only an English degree and prior employment as a copy editor.  His lack of qualifications contributed to the length of time that O.B. and her father were separated and caused them grievous injury.

Although the Court recognizes Defendant Kline's failings and inadequate qualifications, at best, his conduct was negligent.  He is protected from individual liability by statutory immunity.

The Court concludes that all the individual Defendants, aside from Defendant Holly Hartman, are entitled to summary judgment on Count Four - Violation of Civil Rights under 42 U.S.C. § 1983.

## Counts Five and Eight - *Monell* Claims; Negligent Training, Supervision and Retention

Plaintiffs claim that Defendant RCCS established policies, procedures, customs and/or practices which caused them injury by violating their constitutional rights as guaranteed under the First, Fourth and Fourteenth Amendments.  The challenged policies include: (1) using undue influence, coercion or duress; (2) detaining or removing children without exigent circumstances; (3) providing false information or omitting exculpatory information in applications for warrants to remove children from their parents' home; and (4) causing medical examinations of minors without consent of parents or guardians and without medical urgency.  Plaintiffs also allege that Defendant RCCS failed to adequately train and supervise its employees, agents and counselors.  Defendant RCCS had actual or constructive knowledge

-15-

of the incompetence of its employees, agents and counselors; yet retained them and encouraged their wrongful conduct. Defendant RCCS's conduct damaged Plaintiffs and deprived them of the rights afforded citizens by the United States Constitution and well-established law.

Municipalities, counties, and other governmental entities cannot be held liable for injuries inflicted solely by their employees or agents unless there is a direct causal link between a governmental policy or custom and the alleged constitutional tort. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff must show that the unconstitutional policy or custom existed, that the policy or custom was connected to the government entity, and that the policy or custom caused his constitutional violation. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir.1993). A governmental entity cannot be held liable simply upon the theory of *respondeat superior*. *Monell*, 436 U.S. at 691. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell*, 436 U.S. at 694. However, the occasional negligent administration of an otherwise sound policy is not sufficient to impose municipal liability. *Heyerman v. County of Calhoun*, 680 F.3d 642, 648-49 (6th Cir.2012).

Plaintiffs identify numerous alleged illegal policies or customs (as the Court partially listed above). In addition, Plaintiffs contend that Defendant RCCS has a policy of seeking an *ex parte* order to remove a child when the parents fail to cooperate with RCCS. Plaintiffs rely upon the testimony of Officer Lance Combs of the Shelby Police Department for evidence of this unconstitutional policy. Officer Combs accompanied the RCCS case workers to the

Bauch home on the night that O.B. was removed.  At Officer Combs' deposition (ECF DKT #213-5 at 11), the following exchange occurred:

> Q.  Did either of the workers from Children Services that evening tell you that if Monty didn't cooperate with them going in the house that they were going to take [O.B.] ?
>
> A.  I know that it is a — or was a typical — still can be, in my opinion, a practice that if compliance isn't voluntarily achieved, that it was not uncommon for them to go to a magistrate and seek an emergency custody order.
>
> Q.  So as a general practice, you understood that if Children Services felt a parent was not cooperating, they would seek an emergency removal order?
>
> A.  That has been my experience on certain cases, yes.

The Court finds that Plaintiffs have not met their burden of establishing the RCCS's unconstitutional policy.  Plaintiffs have shown that when Bauch did not voluntarily comply with RCCS's requests, particularly to consent to the SANE examination, RCCS went to a Juvenile Court Magistrate for an emergency order.  The Court is not convinced that seeking a court order when there is a lack of voluntary compliance is an unconstitutional practice.

Plaintiffs have no evidence of how many times this occurs.   Plaintiffs have provided no evidence whether the policy-maker is the Director of RCCS or the Case Worker Supervisor or some other individual, so as to justify characterizing the policy as an official policy.  Officer Combs certainly has some experience with the investigation of child abuse or neglect.  However, Officer Combs' experiences may be merely apocryphal and cannot

-17-

establish official Richland County custom for § 1983 liability.  A "custom" for purposes of liability must " be so permanent and well settled as to constitute a custom or usage with the force of law."  *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.1993).

A governmental entity can be liable under § 1983 for the failure to train or supervise its employees or agents where the failure to train or supervise amounts to deliberate indifference to the rights of persons with whom the employees or agents come into contact. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiffs show that the case worker assigned to implement and monitor the case plan for O.B., Jason Kline, was not adequately qualified under Ohio law.  Plaintiffs point out that the *Ex Parte* Emergency Removal Order was signed only by the Magistrate, when RCCS policy requires the additional signature of a Judge.  (ECF DKT #204-11).  Plaintiffs show that Bauch was not served with the Order until after O.B. was removed from her home and that conduct violated RCCS procedures.  RCCS procedure also required the Case Workers to consult with in-house counsel if possible, before taking emergency measures.  This was not done.

The Court holds that genuine issues of material fact remain as to whether these training and supervising failures render Defendant RCCS liable under 42 U.S.C. § 1983 for violating Plaintiffs' First, Fourth and Fourteenth Amendment rights.  Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment are denied as to Counts Five and Eight of Plaintiffs' Second Amended Complaint.


**III. CONCLUSION**


-18-

For these reasons, the Motion (ECF DKT #202) of Defendants, Richland County Children Services ("RCCS"), Randy Parker, Patricia Harrelson, Edith Gilliland, Jason Kline, Tara Lautzenhiser and Holly Hartman, for Summary Judgment is granted in part and denied in part.  The Motion (ECF DKT #204) of Plaintiffs, Monty Bauch and O.B., for Summary Judgment on Counts One, Two, Four and Eight Against Individual Defendants and RCCS is denied.

**IT IS SO ORDERED.**

**s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated:  March 31, 2017**